**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

JERRY W. YOUNG,

    *Plaintiff*,

v.                                    CASE NO. 10-CV-11329

COMMISSIONER OF              DISTRICT JUDGE PATRICK J. DUGGAN
SOCIAL SECURITY,               MAGISTRATE JUDGE CHARLES E. BINDER

    *Defendant*.
_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**[1]

**I.    RECOMMENDATION**

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

**II.    REPORT**

    **A.    Introduction and Procedural History**

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for a period of disability and disability

---

[1] The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), the recently amended provisions of Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

insurance benefits (DIB). This matter is currently before the Court on cross-motions for summary judgment. (Doc. 11, 16.)

Plaintiff was 46 years of age at the time of the most recent administrative hearing. (Transcript, Doc. 5 at 7-8.) Plaintiff's employment history includes work as a sorter, pre-cook/line leader, cleaner, baker, and general laborer. (Tr. at 124.) Plaintiff filed the instant claim on April 1, 2006, and January 25, 2007, alleging that he became unable to work on January 1, 2006. (Tr. at 89-98.) The claim was denied at the initial and administrative stages. (Tr. at 21, 24.) In denying Plaintiff's claim, the Commissioner considered "substance addiction – drug" and affective disorders as possible bases of disability. (Tr. at 21.) Plaintiff requested a hearing before an administrative law judge on August 1, 2006. (Tr. at 48.)

On November 17, 2008, Plaintiff appeared before Administrative Law Judge ("ALJ") Dean Metry, who considered the application for benefits *de novo*. (Tr. at 28-35.) In a decision dated December 29, 2008, the ALJ found that Plaintiff was not disabled. (Tr. at 35.) Plaintiff requested a review of this decision on January 20, 2009. (Tr. at 83-84.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on January 27, 2010, when the Appeals Council denied Plaintiff's request for review. (Tr. at 36-41.) On April 2, 2010, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

**B.    Standard of Review**

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is

multifaceted in that a state agency makes an initial determination which can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during the administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("[d]iscounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of

3

disability."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting S.S.R. 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, a court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of a court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence

without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. App'x 521, 526 (6th Cir. 2006).

### C. Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. App'x 515, 524 (6th Cir. 2003). "[Benefits] are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his] impairments and the fact that [he] is precluded from performing [his] past relevant work." *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

## D. ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff last met the insured status requirements on June 30, 2006, and had not engaged in substantial gainful activity from the alleged onset date of January 1, 2006, through his date last insured of June 30, 2006. (Tr. at 30.) At step two, the ALJ found that Plaintiff's depression was "severe" within the meaning of the second sequential step. (*Id.*) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. at 31-32.) At step four, the ALJ found that Plaintiff could perform his past relevant work as a sorter. (Tr. at 34.) Alternatively, at step five, the ALJ found that Plaintiff could perform a limited range of work at all exertion levels. (Tr. at 32-34.) Therefore, the ALJ found that Plaintiff was not disabled. (Tr. at 35.)

**E.     Administrative Record**

A review of the relevant medical evidence contained in the administrative record indicates that Plaintiff was treated for depression at Hurley Medical Center in Flint, Michigan, from September 2005 through June 2006. (Tr. at 212-36.) On April 20, 2006, it was noted that Plaintiff had applied for disability benefits and that, when Plaintiff discussed his symptoms, it was "like [he was] reading from a book" and was "unable to explain how he feels." (Tr. at 217.) It was also noted that Plaintiff last used cocaine in February 2006. (*Id.*)

Based on Plaintiff's reported frequent headaches, a CT scan was taken of Plaintiff's head in October 2005 and it was "normal." (Tr. at 232-33.)

Plaintiff was also treated by Genesee County Community Mental Health from September 2005 through April 2006. (Tr. at 245-90.) Plaintiff was diagnosed with mood disorder, NOS, and polysubstance abuse. (Tr. at 285.)

A psychological evaluation was conducted at the request of Disability Determination Services on May 31, 2006. Plaintiff "described the history of his alleged disability as, 'I was a heavy drug user, PCP, cocaine, some speed, and it messed me up, starting couple years ago I noticed it.'" (Tr. at 197.) Plaintiff described his symptoms by stating, "'I can't stay focused, memory is bad, headaches, stomach problems, I worry about little things, can't sleep good.'" (*Id.*) The examiner stated that Plaintiff "presented, subjectively, as someone who was magnifying his condition." (Tr. at 200.) The examiner also found Plaintiff to be "an autonomous individual." (Tr. at 201.) "Based on what Mr. Young presented to this examiner regarding his routine and interests, the alleged deficits arising from his claim does not appear consistent with the reported activities in which he regularly engages, as reported by Mr. Young." (Tr. at 200.)

7

The examiner found that Plaintiff's "[t]hought processes were logical, coherent, and goal directed. There were no abnormal findings in the perceptual domain. There were no signs of delusions or a thought disorder present. No hallucinations or thought insertion was noted. Obsessions and compulsions were not noted. Persecutory ideation was not present." (Tr. at 201.) In addition, the examiner found Plaintiff's "stream of mental activity was spontaneous and unblocked as evidenced by appropriate receptive and expressive language skills, which were intact. Speech was fluent and coherent. Volume was appropriate. Speech cadence was within normal limits." (*Id.*) Plaintiff's "[r]ecent, intermediate, and remote memories were intact and available for retrieval as evidenced by the following [tests]." (Tr. at 202.)

The examiner diagnosed Plaintiff with "Polysubstance Dependence in early remission," found "[n]o affective difficulties," and stated that the "prognosis for complete remission of the substance use is very guarded." (Tr. at 204.) The examiner concluded that "[t]here is nothing presented that would socially or psychologically prevent Mr. Young from seeking, obtaining, and maintaining gainful employment." (*Id.*) The examiner also noted that Plaintiff was, at the time of the interview, involved in a Salvation Army recovery program, which is "a work program, where the participants collect clothing and materials from the 'Drop-boxes' in our area." (Tr. at 205.)

On June 15, 2006, Plaintiff was referred for a psychiatric assessment wherein it was noted that test results were invalid due to Plaintiff's "great deal of symptom magnification," "extreme exaggeration or response bias," and response performance that was so poor that it could only be due to a person "deliberately deciding to not perform or trying to perform badly." (Tr. at 237.) The examiner also noted that "the alleged deficits arising from his claim does [sic] not appear consistent with the reported activities in which he regularly engages." (Tr. at 237-38.) When asked whether anything would prevent Plaintiff from working, Plaintiff's response was, "'don't know.'"

8

(Tr. at 238.) The examiner concluded that "[n]othing presented . . . would socially or psychologically prevent [claimant] from seeking, obtaining, and maintaining gainful employment" and that Plaintiff's mental health impairments were "non severe." (Tr. at 238.)

A case analysis completed on July 18, 2006, by Blaine Pinaire, Ph.D., indicated that Plaintiff is "capable of unskilled work." (Tr. at 291-92.) Dr. Pinaire also completed a Psychiatric Review Technique ("PRT") on July 18, 2006, wherein he diagnosed Plaintiff with affective disorders and substance abuse disorders, specifically, mood disorder, NOS and polysubstance abuse in early remission. (Tr. at 293, 296, 301.) The PRT indicated that Plaintiff is mildly restricted in activities of daily living and moderately limited in maintaining social functioning, concentration, persistence or pace. (Tr. at 303.)

A Mental Residual Functional Capacity Assessment completed by Dr. Pinaire on the same date, July 18, 2006, found that Plaintiff is moderately limited in his ability to understand and remember detailed instructions, to carry out detailed instructions, to maintain attention and concentration for extended periods, and to complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, but was otherwise not significantly limited in understanding, memory, or sustained concentration and persistence. (Tr. at 307-08.) The assessment also concluded that Plaintiff is moderately limited in his ability to accept instructions and respond appropriately to criticism from supervisors, and in the ability to respond appropriately to changes in the work setting, but was otherwise not significantly limited in social interaction or adaptations skills. (Tr. at 308.) The assessment concluded that Plaintiff is "capable of unskilled work." (Tr. at 309.)

Plaintiff also sought treatment at New Passages Behavioral Health and Rehabilitation Services in 2008, where medication reviews were performed. (Tr. at 336-55.)

A Medical Source Statement was completed in October 2008 by Bettie Johnson, LMSW, who opined that Plaintiff is markedly limited in his ability to relate and interact with supervisors and co-workers, extremely limited in his ability to understand, remember and carry out an extensive variety of technical and/or complex job instructions, mildly limited in his ability to deal with the public, markedly limited in his ability to maintain concentration and attention for at least two-hour increments, and extremely limited in his ability to withstand the stress and pressure associated with an eight-hour workday and day-to-day work activity. (Tr. at 361.) She concluded that neither drug addiction nor alcoholism contributed to the limitations indicated. (*Id.*)

Another Medical Source Statement was completed in November 2008 by a certified nurse practitioner named "Kreiner" who opined that Plaintiff is markedly limited in his ability to relate and interact with supervisors and co-workers, extremely limited in his ability to understand, remember and carry out an extensive variety of technical and/or complex job instructions, mildly limited in his ability to deal with the public, markedly limited in his ability to maintain concentration and attention for at least two-hour increments, and extremely limited in his ability to withstand the stress and pressure associated with an eight-hour workday and day-to-day work activity. (Tr. at 360.) Drug addiction or alcoholism was found to have "mildly" contributed to the limitations indicated. (*Id.*)

Plaintiff's Daily Activity Report indicates that he is able to take care of his personal hygiene, watch television, function without reminders, drive and ride in a car (but does not own a car), and cook (although his wife generally does the cooking), but that "headache[s] and stomach

10

pain prevent" him from doing further activities. (Tr. at 158-62.) In addition, Plaintiff indicated that he does not like to be around people. (Tr. at 163.)

Plaintiff testified at the administrative hearing that he did not work between 1992 and 1998 because he was receiving social security disability benefits due to mental health issues and that the benefits terminated after he overslept and missed his review date. (Tr. at 9.) Plaintiff testified that on good days he attends meetings to help maintain his sobriety. (Tr. at 12.) When the ALJ asked Plaintiff why he cannot work, Plaintiff responded that he "can't concentrate for a long period of time. My mind wanders constantly." (Tr. at 12.) Plaintiff explained, "if I'm watching TV, my mind will go somewhere else, and I can't even remember the program I've been watching." (Tr. at 13.) Plaintiff further testified that he takes one to two naps each day and that his apartment rent is being paid for by Community Mental Health. (Tr. at 13.)

The ALJ asked the vocational expert ("VE") to consider a person of Plaintiff's background who

> has the residual functional capacity of medium work as that term is defined. However, this person must have a job that only allows for routine and repetitive tasks. This person must have a job that only allows occasional public contact. This person needs a job . . . where this person does not work in team or tandem with another individual but can work in the area of . . . coworkers.

(Tr. at 15.) When asked whether such a person could perform Plaintiff's past work as a sorter of clothes that were not on a production line, the VE responded that he could. (Tr. at 15-16.) The VE indicated that her testimony was consistent with the Dictionary of Occupational Titles ("DOT"). (Tr. at 17.)  When defense counsel asked whether work would be precluded if such person were "unable to complete a normal workday and workweek without interruptions from psychologically-based symptoms or they were unable to perform at a consistent pace without unreasonable number and length of rest periods," the VE responded that work would be precluded. (Tr. at 17-18.)

### F.     Analysis and Conclusions

#### 1.     Legal Standards

The Commissioner's regulations state that the agency "will first compare our assessment of your residual functional capacity with the physical and mental demands of your past relevant work." 20 C.F.R. § 416.960(b). "If you can still do this kind of work, we will find that you are not disabled." 20 C.F.R. § 404.1520(f). "'By referring to the claimant's ability to perform a "kind" of work, [the regulations] concentrate[] on the claimant's capacity to perform a type of activity rather than his ability to return to a specific job or to find one exactly like it.'" *Boucher v. Apfel*, 2000 WL 1769520, at *7 (6th Cir. Nov. 15, 2000) (quoting *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995)).

In determining the level of exertion required by prior work, the testimony of the VE should be compared to the DOT. *Bauer v. Barnhart*, 168 Fed. App'x 719 (6th Cir. 2006). Simply asking the VE if his testimony is consistent with the DOT satisfies the requirements under Social Security Regulation 00-4p. *Martin v. Comm'r of Social Security*, 170 Fed. App'x 369, 375-76 (6th Cir. 2006).

Alternatively, the ALJ determined that during the time he qualified for benefits, Plaintiff possessed the residual functional capacity to perform a limited range of work at all exertion levels. (Tr. at 32-34.)

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether substantial evidence supports the ALJ's decision.

#### 2.     Substantial Evidence

Plaintiff contends that substantial evidence fails to support the findings of the Commissioner. (Doc. 11.) As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Plaintiff states that the ALJ "erred as a matter of law in assessing Mr. Young's credibility, as well as the medical opinions of his treating physicians, and thereby, forming an inaccurate hypothetical that did not accurately portray Mr. Young's impairments." (Doc. 11 at 6-13.)

### a. Weight Given to Treating Source Opinions

Plaintiff contends that the ALJ failed to give proper weight to the opinions of the "treating counselor" and "treating Mental Health Specialist." (Doc. 11 at 10.) As indicated earlier, the treating counselor was a certified nurse practitioner (Tr. at 360) and the treating mental health specialist had a master's degree in social work. (Tr. at 361.)

Social Security Ruling 06-03p provides that "only 'acceptable medical sources' can be considered treating sources, as defined in 20 C.F.R. §§ 404.1502 and 416.902, whose medical opinions may be entitled to controlling weight." SSR 06-03p (citing 20 C.F.R. §§ 1527(d) and 416.927(d)). To qualify as a treating source, the acceptable medical source must have "examined the claimant . . . [and have] an 'ongoing treatment relationship' with [the claimant] consistent with accepted medical practice." *Smith v. Comm'r of Soc. Sec.,* 482 F.3d 873, 875 (6th Cir. 2007) (quoting 20 C.F.R. § 404.1502). In addition, "[a]cceptable medical sources" include only licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists. 20 C.F.R. §§ 404.1513(a) and 416.913(a).

Although both of Plaintiff's proffered medical source statements may satisfy the relationship requirement, neither is an acceptable medical source under the regulations. 20 C.F.R. § 404.1513(a); *Miller v. Comm'r of Soc. Sec.*, No. 1:08-CV-1022, 2010 WL 502761, at *5 (W.D. Mich. Feb. 5, 2010) (citing *Doolin v. Astrue*, No. 3:08-cv-243, 2009 WL 1212232, at *8 (S.D. Ohio May 1, 2009) ("a counselor's opinion is not entitled to controlling weight")). Therefore, the rules requiring deference or a rationale for rejecting the opinion do not apply. *Id.* (citing *Burke ex rel. A.R.B. v. Astrue*, No. 6:07-cv-376, 2008 WL 1771923, at *7 (E.D. Ky. April 17, 2008)).

I therefore suggest that the ALJ did not err in failing to treat either of the opinions as treating source opinions.

### b. Plaintiff's Credibility Regarding Subjective Complaints of Pain

Social Security Regulations prescribe a two-step process for evaluating subjective complaints of pain. The plaintiff must establish an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain rising from the condition or (2) the objectively-determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain. 20 C.F.R. § 404.1529(b); *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991) (citing *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986)). If a plaintiff establishes such an impairment, the ALJ then evaluates the intensity and persistence of the plaintiff's symptoms. 20 C.F.R. § 404.1529(c); *Jones*, 945 F.2d at 1369-70. In evaluating the intensity and persistence of subjective symptoms, the ALJ considers objective medical evidence and other information, such as what may precipitate or aggravate the plaintiff's symptoms, what medications, treatments, or other methods plaintiff uses to alleviate his symptoms, and how the symptoms may affect the plaintiff's pattern of daily living. *Id.*

The issue is whether the ALJ's credibility determinations are supported by substantial evidence. An ALJ's findings based on the credibility of an applicant are to be accorded great weight and deference, particularly since the ALJ is charged with the duty of observing a witness's demeanor and credibility. *Walters*, 127 F.3d at 531. When weighing credibility, an ALJ may give less weight to the testimony of interested witnesses. *Cummins v. Schweiker*, 670 F.2d 81, 84 (7th Cir. 1982) ("a trier of fact is not required to ignore incentives in resolving issues of credibility"); *Krupa v. Comm'r of Soc. Sec.*, No. 98-3070, 1999 WL 98645 at *3 (6th Cir. Feb. 11, 1999) (unpublished).

After examining the record evidence, I suggest that substantial evidence supports the ALJ's findings, including the finding that Plaintiff's testimony regarding his level of pain was not fully credible. The examiners found that Plaintiff was not fully credible. One examiner noted that Plaintiff "presented, subjectively, as someone who was magnifying his condition." (Tr. at 200.) Another assessment similarly concluded that test results were invalid due to Plaintiff's "great deal of symptom magnification," "extreme exaggeration or response bias," and response performance that was so poor that it could only be due to a person "deliberately deciding to not perform or trying to perform badly." (Tr. at 237.)

The examiners also found Plaintiff's "alleged deficits arising from his claim does [sic] not appear consistent with the reported activities in which he regularly engages, as reported by Mr. Young." (Tr. at 200, 237-38.) In addition, the examiners noted that there was "[n]othing presented that would socially or psychologically prevent [claimant] from seeking, obtaining, and maintaining gainful employment" because Plaintiff's mental health impairments were "non severe." (Tr. at 238.) I therefore suggest that substantial evidence supports the ALJ's findings that Plaintiff's complaints of disabling symptoms were not fully credible.

**c.     Hypothetical**

Plaintiff contends that the hypothetical did not incorporate the opinion of the "agency physician that opined Mr. Young was 'moderately limited' in 'the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.'" (Doc. 11 at 11, quoting Tr. at 308.) Although Plaintiff correctly cites the moderate limitations noted in the assessment, Plaintiff fails to mention that the same assessment also concluded that Plaintiff is "capable of unskilled work." (Tr. at 309.) In addition, another examiner also concluded that "[t]here is nothing presented that would socially or psychologically prevent Mr. Young from seeking, obtaining, and maintaining gainful employment." (Tr. at 204.) I therefore suggest that the ALJ's hypothetical is nonetheless supported by substantial evidence. *See Infantado v. Astrue*, 263 Fed. App'x 469, 477 (6th Cir. 2008) (substantial evidence supported ALJ's decision where, although the psychiatrist found "moderate" limitations in the plaintiff's ability to maintain attention and concentration for extended periods, the psychiatrist noted the plaintiff's daily activities and concluded that the plaintiff was capable of performing simple tasks on a sustained basis).

I further suggest that the ALJ's findings follow the opinions of the vocational expert, which came in response to detailed and proper hypothetical questions that accurately portrayed Plaintiff's individual impairments in harmony with the relevant objective record medical evidence and with Plaintiff's own statement that, during the relevant time period, he was able to take care of his personal hygiene, watch television, function without reminders, cook, drive, and ride in a car. (Tr. at 158-62.)

    **3.**    **Conclusion**

For all these reasons, after review of the record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

**III.**    **<u>REVIEW</u>**

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

                                       s/ *Charles E Binder*
                                       CHARLES E. BINDER
Dated: May 23, 2011                   United States Magistrate Judge

## **CERTIFICATION**

      I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System.

Date:  May 23, 2011                       By    s/Patricia T. Morris
                                                              Law Clerk to Magistrate Judge Binder